UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TAMMY J. TITUS, ) | CASE NO. 1:08CV2093 |
| ) | |
| Plaintiff, ) | JUDGE CHRISTOPHER A. BOYKO |
| ) | Magistrate Judge George J. Limbert |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Defendant. ) | |

Tammy Titus ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision IN PART and REVERSE IN PART:

**I.     PROCEDURAL AND FACTUAL HISTORY**

On June 15, 2004, Plaintiff filed an application for DIB. Tr. at 90-96. Plaintiff contends that she also filed an application for SSI, but the ALJ "ignored" it, and it was therefore not included in the record. ECF Dkt. #14 at n. 1. Plaintiff's application was denied initially. Tr. at 39-42, 204-208. Defendant contends that Plaintiff's applications were denied on reconsideration. ECF Dkt. #24 at 1. Plaintiff's claim for DIB was denied initially and on reconsideration. Tr. at 70-72, 75-79.

On August 9, 2005, Plaintiff filed a request for an administrative hearing. Tr. at 64-65. On November 19, 2007, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. *Id*. at 765-804. At the hearing, the ALJ heard testimony from Plaintiff and Lynn Smith, a vocational expert. *Id*. On January 24, 2008, the ALJ issued a Notice of Decision - Partially Favorable. *Id*. at 21-35. On July 8, 2008, the Appeals Council denied Plaintiff's request for review. *Id*. at 5-7.

On September 2, 2008, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On February 24, 2009, Plaintiff filed a brief on the merits. ECF Dkt. #14. On May 18, 2009, Defendant filed a brief on the merits. ECF Dkt. #17. On June 2, 2009, Plaintiff filed a reply. ECF Dkt. #18.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ found that plaintiff has the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease; fibromyalgia; and a major depressive disorder. Tr. at 26. Next, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. Tr. at 27. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with restrictions. *Id*. at 29. He specifically found that she could lift, carry, push, and/or pull a maximum of 10 pounds, could sit for 6 hours, and could stand and/or walk for 2 hours out of an 8-hour workday. *Id*. He also found that she was restricted to a cane in her right hand, that she was precluded from kneeling, crouching, crawling, and using ladders, ropes, or scaffolds, and that she could not work above shoulder level bilaterally or perform tasks requiring hyper extension of the neck. *Id*. Lastly in regard to Plaintiff's restrictions, the ALJ determined that she was limited to simple, routine, low-stress tasks. *Id*. Based on Plaintiff's RFC, the ALJ concluded that, prior to August 15, 2007, Plaintiff was capable of performing her past relevant work as a data entry clerk and as a tax preparer. *Id*. at 33-34.

The ALJ also found that, beginning on August 15, 2007, Plaintiff's degenerative disc disease of the knees met the requirements of Listing 1.02A. Tr. at 34. Accordingly, the ALJ found that Plaintiff was not disabled prior to August 15, 2007, but she was disabled on that date and has continued to be disabled. *Id*.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R.

        §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532.

Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V.    ANALYSIS**

    **A.    Whether the ALJ erred in finding that Plaintiff can perform her past relevant work.**

Plaintiff first contends that the ALJ erred in finding that she could return to her past work as a data processor and a tax preparer after concluding that she was limited to simple, routine, and low-stress tasks. ECF Dkt. #14 at 11. Plaintiff reasons that these positions are semi-skilled and are, therefore beyond her RFC. *Id*.

The vocational expert did in fact testify that Plaintiff's past work was semi-skilled with a specific vocational preparation ("SVP") of 4. Tr. at 796. The vocational expert then testified that if simple work is defined as "unskilled," then a hypothetical person with Plaintiff's RFC could not perform the duties of data entry or tax preparation. *Id*. at 800-01. The vocational expert also opined that an occupation could be classified as SVP 4 but also be considered simple:

> Well, you know, data entry and tax preparation are very, it's the same all the time. You know it's, it's a very specific type of industry. It's something that if you do it long enough, and obviously she did it for seven years, it should be simple and routine and, you know, the, the low-stress, you know, that, that's a little bit questionable with the tax industry just because they have a very short, you know, livelihood of three months. You could say that, you know, that could be marginal, but that, that's, you know, that's a time stress type of thing. It's not the job itself is stressful so much as the time regulations that are sometimes placed on it.

Tr. at 800.

Plaintiff contends that her experience cannot change the required skill-level of the position; a position's skill-level is defined by its vocational requirements not the worker's experience. ECF Dkt. #14 at 13; ECF Dkt. #18 at 2. Defendant contends that the ALJ did not have a duty to rely on generalized guidelines rather than particularized expert testimony. ECF Dkt. #17 at 14. The undersigned recommends that the Court reject Defendant's position because there is no indication that the Code of Federal Regulations sets forth "guidelines" as Defendant contends. Instead, the Code provides specific definitions of "unskilled", "semi-skilled", and "skilled" work that the Commissioner is *bound* to use in making disability determinations. 20 C.F.R.404.1568. Moreover, the Sixth Circuit has explicitly equated unskilled work with simple, repetitive, and routine tasks.

-4-

*Allison v. Apfel*, 229 F.3d 1150 (Table), 2000 WL 1276950 at *4 (6th Cir. Aug. 30, 2000), unreported.

The undersigned believes that Plaintiff's argument is compelling because the Sixth Circuit has held that simple work is synonymous with unskilled work. *Allison*, 2000 WL 1276950 at *4 ("We believe that the ALJ's qualification that Allison was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that Allison is limited to unskilled light work."). Further, as Plaintiff notes, the Commissioner's own regulations define unskilled work to include simple duties: "Unskilled work is work which needs little or no judgment *to do simple duties* that can be learned on the job in a short period of time. The job may or may not require considerable strength." 20 C.F.R. § 404.1568(a) (emphasis added). Further, the Regulations acknowledge that semi-skilled work requires an ability to complete duties that are *more complex than unskilled work*. 20 C.F.R. § 404.1568(b) (" Semi-skilled jobs may require alertness and close attention to . . other types of activities which are similarly less complex than skilled work, *but more complex than unskilled work*.")(emphasis added). Accordingly, semi-skilled work requires an ability to undertake more than simple tasks.

In this case, the ALJ found that Plaintiff was limited to simple tasks and the vocational expert's testimony establishes that Plaintiff's past work as a data processor and a tax preparer were semi-skilled. However, the ALJ and the vocational expert went on to conclude that, even though these jobs are semi-skilled, they are simple and routine if a worker has performed them long enough.[1] The undersigned believes that the ALJ's and the vocational expert's conclusions are contrary to the plain meaning of "semi-skilled" as set forth in 20 C.F.R. §404.1568 and as interpreted by the Sixth Circuit in *Allison*. There is no legal basis for concluding that a person limited to simple and routine tasks can perform the duties of a semi-skilled position. Although the ALJ attempted to reason that Plaintiff in this particular case had experience sufficient to make her

---

[1] The undersigned notes that, even if the vocational expert was operating under a different definition of "semi-skilled" than 20 C.F.R. §404.1568(a) sets forth, the ALJ is *bound* to use the definitions set forth in 20 C.F.R. §404.1568, and he explicitly stated that Plaintiff's past work was classified as semi-skilled. *See* 20 C.F.R. §404.1568*, introductory paragraph* (as to ALJ's duty); Tr. at 33 (as to ALJ's finding). Therefore, the ALJ's finding should be strictly interpreted within the scope of 20 C.F.R. §404.1568.

past work simple and routine, the undersigned believes that experience is more of a consideration of RFC and not of the duties of a particular vocation. In other words, if the ALJ thought Plaintiff could undertake more than simple and routine tasks because of her experience, he should have found accordingly. He should, however, be bound by the regulations stating that semi-skilled work requires an ability to undertake more than simple duties. Therefore, he should now go on to consider whether Plaintiff can perform work other than her previous work.

Therefore, the undersigned recommends that the Court find that the ALJ erred in finding that Plaintiff was able to return to work as a data processor or a tax preparer. The undersigned further recommends that the Court remand the instant case for further analysis, factfinding, and articulation to determine if Plaintiff can perform other jobs existing in significant numbers in the national economy. *See* 20 C.F.R. 404.1512(g).

### B. Whether the ALJ erred in disregarding the medical opinion of Plaintiff's treating physician

Next, Plaintiff contends that the ALJ erred in failing to mention an opinion from her treating physician, Dr. Wilson. ECF Dkt. #14 at 14-16. Defendant contends that any failure by the ALJ to mention Dr. Wilson's opinion is harmless because Dr. Wilson stated his opinion in November of 2007, and the ALJ found that her period of disability began in August of 2007. ECF Dkt. #17 at 13. Defendant further contends that there was no indication that the opinion was retroactive to any particular date, and even if it had been, the ALJ would have been well within his judgment to give it little weight based on the evidence of record. *Id*. at 13-14. Plaintiff contends, however, that the ALJ's failure to articulate a reason for rejecting Dr. Wilson's opinion constitutes remandable error irrespective of harm because the regulations require the ALJ to "provide 'good reasons' for discounting treating physicians' opinions, reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." ECF Dkt. #18 at 5 quoting *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007).

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the

-6-

opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544. A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985). When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion: the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [he or she] is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

Here, Dr. Wilson proffered an opinion that Plaintiff: could not stand for more than an hour

-7-

a day or sit for more than an hour in an eight-hour workday; she would need to elevate her legs for more than two hours during an eight-hour workday and would need to lie down for more than two hours during an eight-hour workday; her ability to lift and carry was limited to five pounds at most and she could only occasionally finger and should never handle, reach, or stoop. Tr. at 763-63A. Dr. Wilson's opinion should be presumed to be entitled to controlling weight because of his extensive treating relationship with Plaintiff, which spans from July of 2006 through November of 2007 and includes over 96 office visits. Therefore, unless the ALJ has articulated reasons explaining why the opinion is not consistent with other evidence of record, remand is necessary. *Rogers*, 486 F.3d at 242.

The ALJ did not specifically articulate reasons for rejecting Dr. Wilson's opinion. ECF Dkt. #17 at 13. The Court should reject Defendant's argument that Dr. Wilson's opinion is not retrospective. While Defendant contends "there was no indication that the opinion was retroactive to any particular date," Dr. Wilson clearly stated that he had treated Plaintiff from July of 2006 through the date of his opinion. ECF Dkt. #17 at 13 (as to Defendant's quote); Tr. at 763A (as to Dr. Wilson's opinion). Dr. Wilson further stated that Plaintiff had "the most devastating case of rheumatoid arthritis [he] [had] ever seen in 26 years of practicing medicine." Tr. at 763A. He explained that she was taking three disease modifying drugs and narcotic pain killers, and that she had to have her knee drained at least once a week. *Id*. He further indicated that she requires a motorized scooter and has braces for both knees. *Id*. The undersigned has reviewed Dr. Wilson's records, which are quite lengthy, and notes that they appear to corroborate the factual basis of his opinion. *See e.g.,* Tr. at 423-519 (records of Plaintiff's injections); Tr. at 634 (indicating on 02/01/2007 that Plaintiff was approved for an electric wheelchair due to difficulty walking). In other words, it is plain to see that the factual basis for Dr. Wilson's opinion existed for some period of time prior to November 11, 1007, when he actually articulated the opinion. Accordingly, it appears that Dr. Wilson's opinion is in fact retrospective at least for some period, if not for the entire period of treatment. It is however, the ALJ's province to consider Dr. Wilson's opinion in light of other evidence of record and make the ultimate determination upon as to the weight to be afforded to it. The undersigned therefore recommends that the Court remand the instant case due to the

procedural error for failing to address Dr. Wilson's opinion.

### C. Whether the ALJ erred in not inferring an earlier onset date.

Lastly, Plaintiff contends that "[t]he Appeals Council's summary dismissal of the decision's failure to address Dr. Wilson's opinion overlooks the fundamental problem with the decision: the decision failed to address the onset of disability." ECF Dkt. #14 at 16. To the extent that Plaintiff challenges the Appeals Council's decision denying review, the undersigned recommends that the Court deny Plaintiff's claim because "we may only review the ALJ's final decision, not the Appeals Council's non-final administrative decision to deny review." *Wyatt v. Secretary of Health and Human Services*, 12 F.3d 216 (Table), 1993 WL 492311at n. 2 (6th Cir. Nov. 29, 1993) quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir.1992); *Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir.1991) ("[I]f the Appeals Council denies a request for review, the ALJ's decision becomes the final decision of the Secretary, and judicial review is available only for final decisions of the Secretary."). Plaintiff concedes that the ALJ's decision is the final decision of the Commissioner. ECF Dkt. #14 at 4 ("The Appeals Council denied review in a decision dated July 8, 2008, making the administrative law judge's decision the final decision of the Commissioner. Tr. 6-9.").

The undersigned will go on to address the balance of Plaintiff's argument to the extent that she addresses the ALJ's decision directly. As an initial matter, Defendant contends that:

> There is a more fundamental defect with Plaintiff's position, however. While she declares that the ALJ should have found her disabled at some unspecified point in time prior to August 2007, she does not otherwise attack his RFC finding. In fact, she makes no argument that his determination was not supported by substantial evidence, and she raises no objections to either his review of the facts or his analysis of the evidence (other than Dr. Wilson's November 2007 report). This tacit acceptance of the ALJ's determination severely undermines her claim that the ALJ failed to properly determine her onset date. Very simply, if Plaintiff is not arguing that the ALJ's decision lacks substantial support - and it is clear that she is not - then she cannot logically argue that he erred in not finding her disabled prior to August 2007.

ECF Dkt. #17 at 10. The Court should reject this argument because it fails to acknowledge the fact that the sequential evaluation that the Commissioner must undertake in determining disability requires him *first* to determine if a claimant meets a listing and *then* determine what his or her RFC is, if necessary. Therefore, undersigned is not aware of any restriction on a claimant's ability to challenge only an ALJ's finding pertaining to a Listing and not to an RFC determination. Even so,

it appears that Plaintiff has challenged the ALJ's RFC determination to some extent because she has challenged the ALJ's failure to consider her treating physician's opinion, which was submitted in the form of a statement of "Physical Abilities and Limitations." *See* ECF Dkt. #14 at 14-16; Tr. at 763, 63A. If the Court were to remand the instant case for a reconsideration of Dr. Wilson's opinion, then the ALJ would be required to reconsider Plaintiff's RFC. Accordingly, Defendant's contention that Plaintiff does not challenge her RFC is misplaced.

Petitioner contends that Social Security Ruling 83-20 provides guidance on the ALJ's obligations pertaining to determining the onset date of her impairment. ECF Dkt. #14 at 17. Ruling 83-20 provides:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
>
> Particularly in the case of slowly progressive impairments, it is not necessary for an impairment to have reached listing severity (i.e., be decided on medical grounds alone) before onset can be established. In such cases, consideration of vocational factors can contribute to the determination of when the disability began (see example under heading, "Precise Evidence Not Available--Need for Inferences").
>
> \* \* \*
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

SSR 83-20. Based on this Ruling, Plaintiff claims two errors. First, that the ALJ's decision is not supported by substantial evidence because he improperly failed to address Dr. Wilson's opinion. *See* ECF Dkt. #18 at 6. Second, Plaintiff contends that the ALJ erred in failing to call a medical expert to assist in inferring an onset date.

The undersigned recommends that the Court reject Plaintiff's first alleged error because Dr. Wilson's opinion related only to physical abilities and limitations; there is no indication that it would have been probative toward a determination of her meeting a Listing. *See* Tr. at 763-63A; *see also*

20 C.F.R. 404, Subpart P, Appendix 1, Listings 1.02, 1.04. The Listings require very specific clinical findings that simply were not set forth in Dr. Wilson's opinion.

The undersigned also recommends that the Court find no merit in Plaintiff's argument regarding the ALJ's alleged failure to call a medical expert. In interpreting Ruling 83-20, the Sixth Circuit has stated that:

> The portion of the ruling that McClanahan relies on contemplates situations when an individual claims disability and there is no development of the medical record on which the ALJ can rely to ascertain onset. This is not the case here. In fact, McClanahan's medical record was well developed and carefully reviewed by the ALJ.

*McClanahan v. Commissioner of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006). Here, as discussed above, there was ample medical evidence generated from Plaintiff's numerous office visits with Dr. Wilson. Therefore, Plaintiff is not able to contend that there is "no development of the medical record on which the ALJ can rely to ascertain onset." *Id*. Plaintiff's medical records do contain diagnostic imaging that guided the ALJ. The undersigned is not aware of any requirement that the ALJ consult a medical expert to determine if an onset date may have been earlier than what the imaging shows. The purpose of Ruling 83-20, as the *McClanahan* case makes clear is to compel consultation of an expert where medical evidence is absent.

This conclusion is consistent with the general principles of social security law. *Moon*, 923 F.2d, 1181 (imposing the burden of establishing disability on the claimant at steps one through four). Further, "the onset date of progressively disabling conditions may be inferred from the claimant's medical history and symptomatology. However, *the Secretary is not required to disprove an earlier onset date if his determination regarding the onset of the disability is supported by substantial evidence*." *Besaw v. Secretary of Health and Human Services*, 966 F.2d 1028, 1030 (6th Cir. 1992) (emphasis added); *see also Blankenship*, 874 F.2d at 1122. Here, the ALJ's onset date is supported by substantial evidence in the form of x-rays and examinations by orthopedist on and around the onset date. Tr. at 34, 572-74. Accordingly, the undersigned recommends that the Court affirm the ALJ's decision regarding Plaintiff's onset date for meeting Listing 1.02A.

## VI. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's

decision IN PART and REVERSE it IN PART. The undersigned recommends that the Court remand the instant case for further factfinding, analysis, and articulation by the ALJ on why Dr. Wilson's opinion is not consistent with other evidence of record as it relates to Plaintiff's RFC and since the ALJ erred in finding that Plaintiff could perform her past relevant work, the instant case should be remanded so to the ALJ in order to determine if Plaintiff can perform other jobs existing in significant numbers in the national economy.

DATE: July 20, 2009  /s/George J. Limbert
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).